IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE GARCIA, | : | CIVIL ACTION |
|     Plaintiff | : | |
|     v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | NO. 19-5192 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                                          July 24, 2020

        Stephanie Garcia ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has submitted a reply brief. For the reasons set forth below, Plaintiff's request for review is denied and judgment is entered in favor of the Commissioner.

        **I.     PROCEDURAL HISTORY**[1]

        On May 25, 2016, Plaintiff applied for DIB and SSI benefits; she alleged an onset date of February 1, 2016. R. 15; Pl. Br. at 2; Resp. at 4. The Social Security Administration ("SSA") denied Plaintiff's claims on September 19, 2016; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). R. 15; Pl. Br. at 2; Resp. at 4. The SSA granted Plaintiff's

---

[1] The Court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Motion for Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), the administrative record. ("R."), and the attached Exhibits (Ex.).

request and convened a hearing on August 14, 2018.  R. 45.

Plaintiff appeared before Margaret M. Gabell, the ALJ in Elkins Park, Pennsylvania; Plaintiff, represented by an attorney, and vocational expert, Donna Mary Nealon ("the VE") testified at the hearing.  R. 15, 45-46.  On September 21, 2018, the ALJ, using the sequential evaluation process for disability[2], issued an unfavorable DIB and SSI decision.  R. 15-24.  Thereafter, on September 6, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner.  R. 1-5.  On November 4, 2019, Plaintiff sought judicial review from this Court; both parties have consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c).

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## II.     FACTUAL BACKGROUND

A.     Personal History

Plaintiff, born on March 17, 1982, was 36 years old when the ALJ rendered her decision. R. 22; Pl. Br. at 3.  She completed the 10th grade and can read and understand English.  R. 263. Plaintiff lived with her sixteen and nine-year-old daughters, at the time of the hearing.  R. 56.

Plaintiff's work history included: medication technician at Lifepath; childcare at Lifequest; cashier at Rite Aid; phone operator at Towne Answering Service; and self-employed as a housekeeper/cleaner.  R. 53, 61-62; Pl. Br. at 3.  By the time of the hearing, Plaintiff worked continuously at Lifepath, beginning June 2013.  R. 53-54.  She described her job duties as working 12 to 15 hours a week, commuting to various group homes, and preparing and administrating clients' medicine.  R. 55-56.

B.     Plaintiff's Testimony

Plaintiff testified about her impairments at the August 14, 2018 hearing and identified her disabling conditions as: fibromyalgia ("FM"), Hashimoto's thyroid, Achilles tendon issues in her right foot, sleeping problems, and anemia.  R. 51, 262.  Although she briefly mentioned other health concerns, Plaintiff's testimony focused on the pain caused by FM.  R. 45-71.  Plaintiff alleged that her FM triggered neck and back pain that radiated to her legs and arms.  R. 60.  She stated that her menstrual cycle was irregular, caused in part by her FM and the medications she took.  R. 59.  She testified that the FM made her menstruation "ten times" more painful.  *Id*. Plaintiff also stated that weather impacts her and causes her to experience pain in her feet and toes. R. 63-64.  She experiences fatigue, even after long bouts of sleep.  *Id*.

Because of her impairments, Plaintiff alleges that she made mistakes at work which resulted in her suspension.  R. 60-61.  She was required to retake a course and pass an examination,

before she could return to work. R. 61. Once Lifepath lifted the suspension, Plaintiff resumed her employment, albeit with fewer responsibilities; she was placed in charge of two homes, instead of three. *Id*. She also testified that, on particularly painful days at work, she takes many breaks. R. 63.

Plaintiff takes 2,300 milligrams of Gabapentin, to lessen her pain and iron pills for her anemia. R. 52, 58. She said that the Gabapentin causes her to speak in a slow or slurred manner. R. 58. Furthermore, Plaintiff alleges that her body has become accustomed to the medication, thus, diminishing its effectiveness. R. 59. Doctors attempted switching Plaintiff to Lyrica instead, however, its side effects included swollen ankles and feet; Plaintiff switched back to Gabapentin, to resume working. R. 64.

Plaintiff cannot drive at night, because her medication causes "a lot of brain fog;" she must write things down to help her remember. R. 59. Although Plaintiff did not testify to any other limitations and is able to perform all daily living activities, her two daughters help around the house. *Id*.

C. Vocational Testimony

The VE classified Plaintiff's medication technician position as medium[3] with an SVP of 4, making it semi-skilled[4] work; the nursery school attendant position as light[5] and semi-skilled work; the housekeeping position as unskilled[6] work with light exertion; and the telephone answering

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties…A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).
[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).
[6] "Unskilled work is work which needs little or no judgment to do simple duties that can learned on the job in a short period of time. The job may or may not require considerable strength." 20 C.F.R. §§ 404.1568(a), 416.1568(a).

service operator position as semi-skilled, sedentary[7] work. R. 67. The VE was asked to consider if a person of Plaintiff's age, education and work experience, who could perform light work but was limited to occasional postural changes; could never climb ladders, ropes, scaffolds, or be exposed to unprotected heights; must avoid extreme temperatures; but could frequently reach, handle, and finger, with occasional overhead reaching and lifting; would be able to perform any of Plaintiff's prior jobs. R. 67. The VE responded that this individual could perform Plaintiff's prior cashier and housekeeper positions. R. 67-68.

Next, the ALJ asked whether an individual from the above hypothetical could perform any other jobs. R. 68. The VE testified that such an individual would be able to work as: (1) sorter (538,000 positions in the national economy); (2) marker (2,000,000 positions in the national economy); and survey worker (190,000 positions in the national economy). R. 68. If the same individual was limited to sedentary exertion work, the VE testified that they could not perform any of Plaintiff's past work, but, nevertheless, could perform alternative jobs such as: (1) addresser (75,000 positions in the national economy); (2) order clerk (169,000 positions in the national economy; and (3) toy stuffer (393,000 positions in the national economy). *Id*.

The VE further confirmed that, if an individual needed two to three 15-minute breaks, in addition to his or her regularly scheduled rest breaks, they would be unable to maintain any employment. R. 68-69. Likewise, if the same individual was unable to complete their workweek by leaving 60 minutes early or arriving 60 minutes late, they would not be employable. R. 69. The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles; her testimony regarding breaks, being off-task, missing days of work, and overhead reaching was

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

5

based on professional experience working with employers in the field. R. 70.

### III.  THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. The [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The [Plaintiff] has not engaged in substantial gainful activity since February 1, 2016, the alleged onset date (20 CFR 404.1571 and 416.971 *et seq.*).

3. The [Plaintiff] has the following severe impairments: fibromyalgia, iron[-] deficient anemia, thyroid disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except occasional postural maneuvering, including climbing ramps and stairs, but no climbing ladders, ropes, or heights; avoid temperature extremes; frequent reaching, handling and fingering; occasional overhead reaching and lifting; and unskilled work.

6. The [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The [Plaintiff] was born on March 17, 1982[,] and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is "not disabled," whether or not the [Plaintiff] has

>    transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from February 1, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 17-19, 22-23.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may amount to less than an evidentiary preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.     Burden of Proof in Disability Proceeding

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does exist in the national economy which Plaintiff is capable of performing given her age, education, work experience and residual functional capacity.  *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff did not have a disability between February 1, 2016, and September 21, 2018, pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). R. 23-24.  The ALJ further concluded that, although Plaintiff could not perform her past relevant work, she could perform other jobs in the national economy.  R. 22-

23.

Plaintiff maintains that the ALJ erred by: (1) finding her able to perform other work after the ALJ determined she was unable to perform her past relevant work; (2) rejecting Plaintiff's treating physician's "well supported" opinion that established she is disabled; and (3) rejecting Plaintiff's subjective statements of disability. Pl. Br. at 4-23. The Commissioner counters that the ALJ properly evaluated the evidence in the record and that her decision is supported by substantial evidence. Resp. at 5-14. This Court finds that the ALJ did not commit any reversible errors and her decision is supported by substantial evidence.

1. <u>Substantial Evidence Supports the ALJ's Step Five Finding</u>

Plaintiff argues that, although the ALJ properly determined that she was unable to return to her past relevant work, the burden shifts to the Commissioner to show that the Plaintiff could perform other work within her RFC. Pl. Br. at 4. She contends that she has made out her *prima facia* case for disability benefits, but the ALJ's decision that Plaintiff could perform alternative jobs lacks substantial evidence. Pl. Br. at 5.

This Court finds that the ALJ's Step Five finding is supported by substantial evidence. Here, the ALJ included all of Plaintiff's credible functional limitations in the hypothetical questions posed to the VE. R. 67-70. Further, the ALJ appropriately relied on the VE's testimony that the Plaintiff can perform other jobs in the national economy. R. 23. The VE's testimony provided substantial evidence for the ALJ's determination; thus, Plaintiff's request for remand is denied.

2. <u>Substantial Evidence Supports the ALJ's Evaluation of Dr. Priscilla Benner's Opinion</u>

Plaintiff next argues that the ALJ erroneously rejected her treating physician's opinion. Pl. Br. at 5. She contends that the ALJ's rejection of Dr. Benner's opinion is based solely on a

Function Report which was completed by the Plaintiff when she first applied for benefits. Pl. Br. at 11. Plaintiff asserts that the record supports Dr. Benner's finding that Plaintiff is disabled and, thus, the ALJ should have afforded the decision great, if not controlling, weight. Pl. Br. at 12-13.

This Court disagrees, because the ALJ's decision is supported by substantial evidence. When making disability eligibility determinations, an ALJ will typically accord a treating physician's opinion great weight, especially when it is based on continued observation of the claimant. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999)). However, if the treating physician's opinion conflicts with that of a non-treating or non-examining physician, the ALJ may choose who to credit or simply reject the opinion outright, "on the basis of contradictory medical evidence." *Id*. at 317-318.

Dr. Benner opined that Plaintiff is disabled because she would need to take unscheduled breaks throughout the workday; have significant limitations with reaching, handling or fingering; was incapable of performing even "low stress" work, and would be off-task to an extent that would interfere with attention and concentration for 25% or more of an 8-hour workday. Pl. Br. at 8; *see also* R. 699-702. Dr. Benner further opined that Plaintiff would miss more than four workdays per month and she lacks the stamina and endurance to work at an easy job 8 hours a day, 5 days a week. *Id*. The ALJ afforded Dr. Benner's opinion little weight.

First, the ALJ explained that Dr. Benner's opinion is inconsistent with the record as a whole, because Plaintiff worked 12 to 15-hour shifts at Lifepath, administrated medication, and reported to patients' homes every four hours. R. 22. The ALJ also noted that the Plaintiff, at times, worked at the SGA level. *Id*. Further, the ALJ walked through other evidence in the record that demonstrated that Plaintiff routinely exhibited normal gait and balance, showed no evidence of muscle atrophy, and exhibited full-strength throughout her physical examinations. R. 20. The

ALJ determined, based on Plaintiff's testimony and records, that Plaintiff can perform activities of daily living, such as managing her personal care, handling finances, driving, preparing meals, shopping and performing household chores. R. 21. The ALJ considered her limiting factors and found that she would still be able to perform at a sedentary exertional level with additional limitations. R 21.

Second, the ALJ also considered other doctors' consultative examinations. R. 21. The ALJ gave some weight to Dr. Mark Bohn, the state agency's medical consultant, and Dr. Ziba Monfared, the consultative examiner. *Id*. Dr. Bohn opined that Plaintiff can perform light work with postural maneuvering, but with only occasional climbing of ramps, stairs, ladders, ropes, or scaffolds. R. 21; *see also* Exhibit 3A and 4A. Dr. Monfared opined that Plaintiff could lift 50 pounds frequently and 100 pounds occasionally, sit for eight hours, stand for four, and have frequent use of her feet for the operation of foot controls. R. 21; *see also* Exhibit 5F. Both Dr. Bohn and Dr. Monfared opined that Plaintiff could perform light duty work, nevertheless the ALJ determined that limiting Plaintiff to sedentary exertional work was appropriate. R. 21-22.

Finally, as stated above, the ALJ is required to review the relevant evidence and, if there is substantial evidence to support her factual determinations, this Court should accept those fact-findings. *See Poulos*, 474 F.3d at 91. Substantial evidence is less than a preponderance. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The ALJ thoroughly explained why she afforded Dr. Benner's opinion little weight. Certainly, substantial evidence, which is not a great deal of evidence, *Pierce*, 487 U.S. at 565, supports that conclusion. Since there is substantial evidence to support the ALJ's conclusion, it should be affirmed.

3. <u>The ALJ Followed the Appropriate Legal Standard in Evaluating Plaintiff's Symptoms</u>

Plaintiff next complains that the ALJ failed to properly evaluate her testimony and

subjective statements concerning her limitations. Pl. Br. at 22. She argues that the ALJ erred when she gave an abbreviated summary of Plaintiff's hearing testimony and mischaracterized statements contained in her function report. *Id*. Further, Plaintiff asserts that remand is appropriate, because the ALJ discounted Plaintiff's testimony based on the conservative treatment of her FB. *Id*.

This argument lacks merit. Although the ALJ does note that Plaintiff received conservative treatment, that was not the sole explanation offered to discredit her testimony. *See Sykes v. Apfel*, 228 F.3d 259, 266 n.9 (3d Cir. 2000) (The *Sykes* Court held that an ALJ discrediting a Plaintiff's testimony based solely on conservative treatment, is insufficient). As stated above, the ALJ relied on the opinions of Drs. Bohn and Monfared. R. 21. Dr. Monfared opined that Plaintiff is capable of lifting up to 100 pounds occasionally, up to 50 pounds frequently, and up to ten pounds continuously and carrying up to 100 pounds occasionally, up to 20 pounds frequently, and up to ten pounds continuously. R. 523. These weights are consistent with light work. The ALJ, nevertheless reduced exertion to sedentary. R. 23. He also opined that she is able to perform all her daily living activities: she can cook, clean, do laundry, shop, shower and dress herself daily. R. 519-520.

Other record evidence supports the ALJ's determination. First, Dr. Howard Zipin opined that Plaintiff is fully active and able to carry on all of her pre-disease performance, without restriction. R. 510. Drs. Bohn and Monfared opined that Plaintiff could perform work at the light exertion level. R. 21, R.518-520; *see also* Exhibit 3A and 4A. Even so, the ALJ expressly considered Plaintiff's testimony, "giving [her] the benefit of the doubt as to the limiting effects from her impairments[,]" and determined that she had an RFC to perform sedentary, instead of light, work as was previously opined by the consultative doctors. R. 19-22. The ALJ properly

explained how she considered all the evidence, including Plaintiff's statements about intensity, persistence, and limiting effects, when she determined that Plaintiff's symptoms were not entirely consistent with the medical evidence and record. R. 19-22. Hence, the ALJ properly evaluated Plaintiff's credibility, Dr. Benner's opinion, and the RFC ultimately set.

## V. CONCLUSION

Review of the relevant law and record indicates that Plaintiff's assertions of error lack merit. Accordingly, her Request for Review is denied. An implementing Order and Order of Judgment follow.

*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
United States Magistrate Judge